```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION

PHILLIPS BROTHERS           *
HOSPITALITY GROUP, CORP.    *
d/b/a Mercantile Social,    *
                            *
     Plaintiff,             *
                            *
vs.                         *    CASE NO. _____
                            *
CITY OF ALPHARETTA,         *
GEORGIA,                    *
                            *
     Defendant.             *
```

**COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

1.

This is a First Amendment retaliation case.  It arises from the City of Alpharetta's denial of Plaintiff's 2026 alcoholic-beverage license renewal based <u>solely</u> on conduct that was previously adjudicated and sanctioned through the City's completed administrative enforcement proceeding.

<u>Parties</u>

2.

Plaintiff Phillips Brothers Hospitality Group, Corp. d/b/a Mercantile Social ("Mercantile") is a Georgia corporation in good standing which operates a restaurant at 20 N. Main St. Alpharetta GA 30009.

3.

Defendant City of Alpharetta ("the City") is a

political subdivision of the State of Georgia, which has the capacity to sue and be sued.

## Venue

4.

All acts or omissions alleged in this complaint have occurred, or likely will occur, in the Northern District of Georgia and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

## Jurisdiction

5.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6.

Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 & 2202.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights

guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

8.

Upon exercising supplemental jurisdiction, the Court can entertain an action for declaratory relief under O.C.G.A. § 9-4-1, et seq.

### Facts

#### Mercantile's Operation and the City's Audit

9.

Since 2017, Mercantile has been operating its restaurant in the City's downtown district without incident.

10.

On November 4, 2024, the City notified Mercantile of its intent to conduct an audit of the restaurant's sales records. The audit covered the period from January 1, 2024 through December 31, 2024.

11.

Mercantile cooperated fully with the audit by providing all requested information to the City's chosen auditor.

12.

Mercantile understood that it was required by City Ordinance to collect excise taxes on the sale of drinks.

[See Ex. 1, §§ 4-12 to 4-15.]

13.

Mercantile also understood that because it is an eating establishment that sells alcoholic beverages, it was required by Ordinance to maintain sales of at least 50% food and less than 50% alcohol. [Id. § 4-402.]

14.

The individual owners of Mercantile, Mark and Jon Phillips (brothers), are successful real estate developers who, before purchasing Mercantile Social in 2020, did not have any experience in operating a business that included alcohol sales.

15.

When the Phillips brothers purchased Mercantile in 2020, they hired the managers and staff from the previous owner and retained the POS (Point of Sale) system used by the previous owner.

16.

The POS system which the Phillips brothers acquired when purchasing the Mercantile Social establishment allocated a portion of the sales of alcoholic beverages to alcohol and a portion food.  The result was that the portion (in terms of a percentage) of an alcoholic beverage that includes a mixer, soft drink, fruit, vegetables or other

non-alcoholic additions would be allocated to "food sales" for purposes of both the excise tax and the food-to-alcohol ratio.

17.

The City Ordinance devoted to the excise tax on distilled spirits applies to Mercantile because it sells "by the drink" under Code § 4-15. [See Ex. 1.] That code section, entitled "Distilled spirits sold by the drink," requires a Retailer such as Mercantile to collect an excise tax of 3% "of the charge to the public for the beverage."

18.

The POS system used by Mercantile, to the extent that it delineates between the alcoholic and non-alcoholic contents of an alcoholic beverage has resulted in the under calculation of the proper amount of excise taxes due the City and hence, the underpayment of those taxes when due.

19.

Even though the POS system used by Mercantile, to the extent that it delineated between the alcoholic and non-alcoholic contents of an alcoholic beverage, resulted in the miscalculation of sales upon which Mercantile was calculating its food-to-alcohol ratio, at all times, Mercantile relied in good faith on its inherited POS system and did not intentionally under-report excise taxes or

manipulate food-to-alcohol ratios.

### The City orders Mercantile to appear for a hearing

20.

On August 20, 2025, the City, through its City Clerk, issued a notice of the City's intent to take administrative action against the 2025 alcoholic beverage license issued to Mercantile.  In that notice, the City alleged that, under City Code §§ 4-15 and 4-402, respectively:

a. Mercantile failed to remit appropriate excise tax on the sale of distilled spirits sold by the drink in the amount of three percent of the charge to the public for the beverages; and

b. Mercantile failed to derive a minimum of 50 percent of its total actual gross food and beverage sales from the sale of prepared meals or food.

21.

Mercantile appeared before the City's Hearing Officer (David C. Will) on September 5, and October 17, 2025.  Both parties were represented by counsel at the hearing.

22.

In the hearing, the City argued that Mercantile's alcohol license should be revoked.  Despite knowing that

Mercantile could not (and cannot) survive without an alcohol license, the City did not suggest that any administrative punishment short of a license revocation would do.

23.

Apart from the excise sales reporting discrepancy suggested by the City's audit, the City did not present any evidence that Mercantile had ever violated the Alcohol Ordinance. For example, there was no evidence that Mercantile had sold alcohol to an under-aged person or to an overly intoxicated patron, or that Mercantile had stayed open beyond the allowable hours of operation.

24.

In the hearing, Mercantile accepted responsibility for its sub-50% food-to-alcohol sales ratio. It pledged to implement an operational improvement plan, which includes (1) fixing the POS classification system and monthly auditing each new category code, (2) introducing more prepared meal options to include more small-plate and late-night snack menus, (3) adjusting operating hours to close at 12:00 a.m. on weekends, and (4) training management and staff on these new measures.

25.

After considering the evidence, as well as the arguments of counsel, the hearing officer made the following

findings of fact and conclusions of law:

    A.    <u>For the underpayment of the excise taxes</u>, the punishment is provided in § 4-15(e): "Retail dealers failing to remit excise taxes due and payable to the city as outlined in subsections (c) and (d) of this section shall be charged a ten percent penalty, and interest shall accrue at the rate of one percent per month (12 percent per annum) until all fees are collected by the city." With that finding, the hearing officer ordered that, by no later than December 31, 2025, Mercantile must recalculate the excise taxes due on its sale of distilled beverages with no deductions or setoffs for the additions of nonalcoholic items to the drinks and to remit full payment to the City for the correct amount of taxes, and the ten percent penalty and interest as provided in subsection (e).

    B.    <u>For the submission of data resulting in the miscalculation of the 50% food/50% alcohol ratio</u>, the punishment is set out in § 4-28(c). The hearing officer noted that while revocation is provided for in the Ordinance, not all violations require revocation and determined it is not

      appropriate for the violations at issue. Instead, "in lieu of revocation, the clerk is also authorized to suspend the license of a licensee violating any provision of this chapter. In the event that the clerk elects to suspend a license, such license shall be suspended for three days for the first violation...." As authorized by subsection (c), the hearing officer ordered that Mercantile's alcohol license be suspended for three consecutive days, to be served in January, 2026.

  C.  <u>The hearing officer ordered Mercantile to implement the operational improvement plan</u> it submitted at the hearing, commencing by January 15, 2026.

[<u>See</u> Ex. 2.]

26.

The hearing officer's December 7, 2025 order constituted the City's final administrative action on the alleged violations, subject to no further internal review or appeal by the City.

27.

In late 2025, Mercantile timely applied to renew its alcoholic beverage license for calendar year 2026 pursuant

to City Code § 4-19.

28.

In the meantime, Mercantile continued to operate in compliance with the hearing officer's December 7 order, and, upon information and belief, the City's policymakers were not pleased.

29.

Then, on December 23, 2025, the City Clerk delivered a letter to Mercantile, in which she denied Mercantile's 2026 renewal of its alcoholic beverage license. [See Ex. 3.]

30.

The basis for the City Clerk's denial is the December 7, 2025 order by hearing officer that Mercantile did not properly record and pay excise taxes due to the City. Specifically, the Clerk cited City Code § 4-9(i), which provides in part: "In determining whether or not any license shall be granted, in addition to the other provisions of this chapter, the following shall be considered in the public interest and welfare: ... (2) Whether the applicant has previously had a license to sell alcoholic beverages suspended or revoked."

31.

In her December 23 denial letter, the City Clerk noted that the hearing officer's final decision resulted in a

suspension of Mercantile's license.

32.

In her December 23 denial letter, the City Clerk also stated that following the expiration of Mercantile's 2025 alcohol license, "all alcohol must be removed from the premises or placed in a locked area" and stated that a "Code Enforcement Officer will conduct an inspection of Mercantile Social to ensure compliance."

33.

Upon information and belief, the denial of Mercantile's 2026 alcohol license renewal was made by the City Clerk pursuant to authority delegated by ordinance, or was ratified by the City Council, each of which constitutes final policymaking authority for purposes of alcoholic beverage licensing.

34.

Mercantile, through counsel, has requested that the City rescind its December 23 renewal license denial decision, or at least that the City afford Mercantile a pre-deprivation hearing (i.e., allow Mercantile to continue serving alcohol pending an administrative appeal of the decision), but the City has declined to do so.

35.

Mercantile has no other remedy at law.

Count 1

42 U.S.C. § 1983: First Amendment Retaliation

36.

Mercantile realleges each fact set forth in paragraphs 1 through 35 of this Complaint and incorporates them here by reference.

37.

Mercantile exercised its First Amendment right to petition the government for redress of grievances by contesting the City's revocation effort through a formal, adversarial administrative hearing conducted pursuant to the City's alcohol-licensing ordinances.

38.

After notice and hearing, the City's designated hearing officer rejected the City's request for revocation and instead imposed a limited three-day suspension of Mercantile's alcohol license.

39.

That decision constituted a final administrative adjudication of the alleged excise tax violations, and Mercantile has begun serving the sentences imposed.

40.

In late 2025, Mercantile timely applied to renew its alcoholic beverage license for calendar year 2026 pursuant

to City Code § 4-19.

41.

The City has denied Mercantile's renewal application.

42.

The stated basis for the denial is the same alleged excise tax under-reporting that had already been adjudicated in the § 4-28 enforcement proceeding and for which the City had unsuccessfully sought revocation.

43.

The City has identified no new violations, no post-hearing misconduct, and no changed circumstances occurring after the suspension that would independently justify denial of renewal.

44.

Denial of Mercantile's alcohol license renewal is a materially adverse action that would deter a person of ordinary firmness from exercising the right to petition the government.

45.

The City denied Mercantile's renewal application because Mercantile successfully petitioned the City and prevailed in the prior revocation proceeding.

46.

The temporal proximity between Mercantile's successful

defense of the revocation action and the subsequent renewal denial, combined with the City's reliance on the identical factual allegations already adjudicated, supports an inference of retaliatory motive. But for Mercantile's successful defense of the revocation proceeding, the City would not have denied renewal of its alcohol license.

47.

The City's conduct violates the First Amendment even if renewal of an alcohol license is discretionary because the government may not deny a discretionary benefit in retaliation for protected petitioning activity.

### Count 2

### O.C.G.A. § 9-4-1: Declaratory Judgment

48.

Mercantile realleges each fact set forth in paragraphs 1 through 35 of this Complaint and incorporates them here by reference.

49.

The City's application of Code § 4-9(i) to Mercantile is ultra vires because it allows the City Clerk to ignore Code § 4-28's enforcement scheme.

50.

The City may not deny renewal based solely on conduct already adjudicated and sanctioned as a suspension;

Mercantile seeks a declaration that the City lacks authority under its ordinances to deny renewal of an alcohol license based solely on conduct that has already been adjudicated and sanctioned through a completed § 4-28 enforcement proceeding.

51.

A bona fide dispute exists between the parties.

52.

Mercantile is entitled to have the Court declare its rights under the Georgia Constitution.

53.

This Court has supplemental jurisdiction over this claim (or proceeding) under 28 U.S.C. § 1367.  Because the state or superior court would have jurisdiction over this claim under O.C.G.A. § 9-4-1, this Court's supplemental jurisdiction is also invoked under <u>City of Chicago et al. v. Int'l College of Surgeons</u>, 522 U.S. 156 (1997).

WHEREFORE, Mercantile prays:

(a) That as to Count 1 the Court grant Mercantile's declaratory and injunctive relief, prohibiting the City from denying or withholding renewal of Mercantile's alcoholic-beverage license based on conduct already adjudicated and sanctioned in the

        December 7, 2025 administrative order;

(b)    That as to Count 2 the Court grant the petition for review for the reasons stated herein; and

(c)    That Mercantile be granted such other and further relief as the Court deems just and proper.

                              Respectfully submitted,

                              BY: /s/ Cary S. Wiggins
                              Cary S. Wiggins
                              Ga. Bar No. 757657

WIGGINS LAW GROUP, LLC
Suite 804
260 Peachtree Street, NW
Atlanta, GA 30303
Telephone: (404) 659-2880
cary@wigginslawgroup.com